UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 05-cv-02312-WYD

ASHA BAYS,

     Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,[1]

     Defendant.

_____

**ORDER**
_____

I.      INTRODUCTION

THIS MATTER is before the Court on review of the Commissioner's decision that

denied Plaintiff's application for Disability Insurance Benefits under Title II of the Social

Security Act, 42 U.S.C. §§ 401-433.  Plaintiff's application, protectively filed in April

2003 (transcript ["Tr."] 74-77), was denied initially.[2]  (*Id.* 58-60.)

After a hearing in September 2004 (Tr. 445-63), the Administrative Law Judge

["ALJ"] issued a decision on October 21, 2004, that Plaintiff was not disabled prior to

September 30, 2003, the date her insured status expired, because she retained the

residual functional capacity ["RFC"] for light work and could perform her past relevant

work.  (Tr. 29-36.)  This is discussed in more detail in the following section.

_____

[1]  Michael J. Astrue, the current Commissioner of Social Security, has been substituted for
former Commissioner Jo Anne B. Barnhart pursuant to FED. R CIV. P. 25(d)(1).

[2]  Testing modifications to the disability determination process, the reconsideration step was
eliminated in this case pursuant to 20 C.F.R. § 404.906(b)(4).

The Appeals Council declined review of the ALJ's determination (Tr. 8-12), making it the Commissioner's final decision.  *See* 20 C.F.R. § 404.981.  Plaintiff has exhausted her administrative remedies and the case is ripe for judicial review pursuant to 42 U.S.C. § 405(g).

II.   THE ALJ'S DECISION

The ALJ noted in her decision that Plaintiff was 26 years old at that time and is considered a "younger" individual.  (Tr. 29.)  She has a high school education and two years of college, with past relevant work as a cosmetics sales person, women's apparel sales person, make-up artist and cashier wrapper.  (*Id.* at 29-30.)  The ALJ found that Plaintiff alleges disability beginning December 14, 2001 "from all work activity, including past work, due to chronic pelvic pain and fatigue."  (*Id.* at 30).  The ALJ found at step one of the five-step sequential analysis required by law that while Plaintiff performed some work, this did not constitute substantial gainful activity ["SGA"] since she did not perform either job at substantial gainful levels.  (*Id.* at 30, 35.)

At step two, the ALJ found that Plaintiff had the following severe impairments: "Interstitial cystitis and a history of chronic endometriosis with chronic abdominal pain." (Tr. 30.)  The ALJ further noted that there is "some indication of treatment for symptoms of depression with an assessment of major depressive disorder, but the available evidence does not establish this as a 'severe' impairment which more than minimally impacted the claimant's capacity for basic work function for 12 continuous months beginning on or before her date last insured."  (*Id.*)  Specifically, the ALJ found that "the available record establishes no greater than mild deficits in activities of daily living,

social functioning and maintaining concentration, persistence and pace." (*Id.* 31.)

"Moreover, there is no evidence of any repeated episodes of decompensation, each of

extended duration; a residual disease process that would cause the claimant to

decompensate; or, an inability to function independently." (*Id.*)

At step three, the ALJ found that Plaintiff's severe physical impairments did not

meet or equal a Medical Listing. (Tr. at 31.).  She stated that "the record does not

establish that the requisite criteria were met under any of the appropriate listings" and

that this "is consistent with the narrative evidence, which shows that no medical source

has identified an impairment of listing-level severity." (*Id.*)

The ALJ then examined the medical evidence and assessed Plaintiff's residual

functional capacity ["RFC"] and credibility. (Tr. at 31-34.)  Plaintiff was found as of

September 30, 2003, the date she was last insured, to have the RFC:

> to lift and carry 20 pounds occasionally and 10 pounds frequently.  She
> could sit, stand and walk for 6 hours in an 8-hour day, each. The
> evidence does not support any further work restrictions despite the
> claimant's complaints of chronic pain and fatigue, including her alleged
> need to lie down and sleep during the day. Mentally, the claimant should
> be capable of at least semi-skilled work.

(*Id.* 34.)

In making this assessment, the ALJ considered Plaintiff's credibility. (Tr. at 31-

32.)  After considering Plaintiff's testimony, medical evidence, and Plaintiff's activities of

daily living, the ALJ found that "while the evidence supports the existence of the above

stated 'severe' impairments, and shows some evidence of depression consistent with a

mild level of functional impairment, the claimant's allegation that any of her medical

impairments produced limitations of sufficient severity to prevent all sustained work activity during the relevant period is inconsistent with the medical and other evidence of record and is not considered fully credible." (*Id.*)  The ALJ also found that Plaintiff's descriptions of her daily activities, including spending time with friends and hiking, "suggest[s] a much greater capacity for physical functioning than described in her testimony." (*Id.*)

Proceeding to step four, the ALJ found, based on Plaintiff's RFC, that Plaintiff "should be capable of performing all of her past relevant work, as those jobs are generally performed in the national economy." (Tr. at 34.)  She stated that her finding on this issue was consistent with the testimony of the vocational expert ["VE"] who was present at the hearing. (*Id.*)  The ALJ also found that the fact that Plaintiff performed work in 2002, although not at substantial gainful levels, "suggests a greater capacity for functioning than alleged and supports the conclusion in this decision that at least prior to her date last insured, the claimant was capable of performing past relevant work, including work as a make-up artist." (*Id.* 30.)  Accordingly, the ALJ found that Plaintiff "was not disabled at any time relevant to this decision." (*Id.* 34.)

III.   ANALYSIS

A.   Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is

evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although the court should carefully examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

B.      Whether the ALJ's Decision is Supported by Substantial Evidence

My review of the record reveals a number of errors that require the Commissioner's decision to be reversed and remanded for a rehearing.

1.      Whether the Commissioner Erred in Connection with the Analysis of Medical Evidence Subsequent to the Date Last Insured

Plaintiff argues that the Commissioner improperly rejected Dr. Slocumb's August 2004 medical source statement as being authored after Plaintiff's date last insured ["DLI"]. (Tr. 33.) It is contended that while Dr. Slocumb does not specify dates, his report submitted to the Appeals Council is clear that the dates of the medical problems that led to the limitations being given existed prior to the DLI. (*Id.* 444). Further, Plaintiff states that it was clear even without this additional report that Dr. Slocumb diagnosed these same medical problems in 2002 (*id.* 259-86), which the ALJ ignored.

Plaintiff also points to other evidence which purportedly shows that she had the

diagnoses/functional abilities reflected in the report prior to the DLI.

Plaintiff also argues that the ALJ improperly dismisses the fibromyalgia problems

because there was no mention of these prior to the DLI.  (Tr. 32.)  She asserts that

Dr. Slocumb's report confirms that the fibromyalgia existed prior to the DLI and that

symptoms date back to May of 2001.  (*Id.* 444.)  This was not even considered by the

ALJ.  Further, Plaintiff states that Dr. Kassan diagnosed fibromyalgia on December 8,

2003.  (*Id.* 375.)  Plaintiff concludes that there is no evidence that her symptoms and

limitations simply appeared in August 2004, as assumed by the ALJ.

Turning to my analysis, the ALJ rejected Dr. Slocum's functional capacity

assessment because it was written after the expiration of Plaintiff's DLI and "does not

specify that the limitations offered existed prior to September 30, 2003."  (Tr. 33.)  The

Commissioner argues that the ALJ reasonably considered the evidence prior to the DLI

in evaluating Dr. Slocum's assessment, and that Plaintiff's argument essentially asks

the Court to reweigh the medical evidence.  I disagree with the Commissioner and find

error on this issue.

It is true that Dr. Slocum's functional capacity assessment was authored after the

DLI.  Accordingly, it consisted of retrospective findings by a treating physician.  While a

treating physician may provide a retrospective diagnosis or findings, there must be

evidence that the claimant was actually disabled prior to the expiration of her expiration

status in order for those findings to be given weight.  *See Potter v. Secretary of Health*

*& Human Servs.*, 905 F.2d 1346, 1348 (10th Cir. 1990).

In the case at hand, there is evidence to suggest that Plaintiff may have been actually disabled during the relevant time period that the ALJ ignored.  Specifically, Dr. Slocum noted in a preoperative report dated January 16, 2003, that Plaintiff "was a make-up artist in the past and has not been able to work secondary to the pain being worse when she is standing." (Tr. 229.)  Dr. Slocum further noted that Plaintiff reported she has not worked for a little over a year. (*Id.*)  Other physicians also noted problems with Plaintiff's ability to work.  Dr. Melmed reported on September 30, 2001, that Plaintiff was having pelvic pain which was limiting her ability to work. (*Id*. 187.)  He also noted that Plaintiff misses work often (3 days a week) due to pain. (*Id*. 185.)  Finally, Dr. Schlaff noted that Plaintiff was unable to work due to pain. (*Id*. 258.)

Dr. Slocum's letter of August 2004 submitted to the Appeals Council, while not precise on this issue, also lends support to my finding.  The Appeals Council found that the letter did not provide a basis for changing the ALJ's decision. (Tr. 8-9.)  Specifically, it  found "Dr. Slocumb's letter of August 8, 2005 noted the various diagnoses which the [ALJ] accepted as indicative of severe impairment, but did not otherwise address disability back to the date last insured or provide additional support for a more restrictive functional capacity extending back to the date last insured." (*Id*. 9.)  However, the letter of Dr. Slocum does lend some support to the argument that the onset date was within the period that Plaintiff was insured, *i.e.*, beginning at least in August 2002 when Dr. Slocum first evaluated Plaintiff. (*Id*. 444.)  This is particularly true when this report is read in conjunction with the earlier medical records of Dr. Slocum noted above.

Further, as to fibromyalgia, it is true that this was not officially diagnosed until after Plaintiff's DLI.  However, the record shows that Plaintiff began reporting diffuse muscle aches or "all-over body pain" since August 2003, prior to the DLI, and that this was a concern due to a family history of fibromyalgia.  (Tr. 300, 400).  The ALJ improperly ignored this evidence.

Based on the foregoing, I find that the ALJ's reasons for rejecting Dr. Slocum's functional capacity assessment and the other evidence submitted after Plaintiff's DLI are not supported by substantial evidence.  Upon remand, the ALJ must properly weigh the evidence and/or develop the record on this issue.

2.      Whether the ALJ Erred in Not Considering Whether Plaintiff Could Engage in Sustained Work

Plaintiff argues that the ALJ failed to make any finding that she could maintain her employment even if she could initially perform substantial gainful activity ["SGA"], and that this also requires a remand.  She asserts that prior to her DLI there are multiple times that she would have missed work either due to medical appointments or because of the pain and limitations that resulted from her medical condition, and that this is documented in the evidence.

Turning to my analysis, the Tenth Circuit has indicated that "'[a] finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time.'"  *Washington v. Shalala*, 37 F.3d 1437, 1442-43

(10th Cir.1994) (quotation omitted).  In *Washington*, the record showed that even when

plaintiff attempted to work, his work was sporadic.  Similarly, in this case there is

evidence that Plaintiff missed work often while working, and/or would need to miss work

at least four days a month, due to her impairments.  (*See, e.g.*, Tr. 185, 187, 229, 408-

13.)  The ALJ's decision does not show that she adequately considered and weighed

this evidence.  Accordingly, I find that a remand is also proper on this issue.

### 3.      Whether the ALJ Erred at Step Four

Plaintiff asserts that the hypothetical question (Tr. 431-33) relies on functional

limitations (lifting twenty pounds occasionally and 10 pounds frequently, standing and

walking for six hours and sitting for six hours) that are not found in the record, even by

the state agency physician.  (*Id.* 143-150).  Further, it is argued that the ALJ apparently

did not accept the treating physicians' statements on limitations as applying to the time

period prior to the DLI, and that the ALJ should have obtained clarification from the

treating physicians or ordered a medical exam on this issue.  Instead, it is contended

that the ALJ simply substituted her opinion for that of the treating physicians.

In response, the Commissioner argues initially that the issues Plaintiff raises

regarding the hypothetical questions posed to the VE are immaterial to this case

because Plaintiff failed to show an inability to perform her past relevant work.  In other

words, the ALJ argues that a VE was not even necessary since the determination was

made at step four where Plaintiff has the burden, as compared to step five where the

Commissioner has the burden.  I disagree.  The ALJ relied on the VE to establish the

fact that Plaintiff could perform her PRW.  Having relied on the VE with regard to this issue, the ALJ was required to pose to the VE a proper hypothetical question.

The Commissioner also argues that it is the ALJ's responsibility to determine RFC, and the RFC found by the ALJ was proper.  While it may be the ALJ's responsibility to determine the RFC, it must be based on substantial evidence in the record.  *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999)*.*  Here, the ALJ did not point to any medical evidence that supported the finding that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently.  Further, the Commissioner has not identified any such evidence in its response brief.  While the RFC determination must be based upon all the evidence in the record, not only the medical evidence, the ALJ did not identify what evidence he relied on to support the RFC findings.  This is error.  *See Moon v. Barnhart*, No. 04-7130, 2005 WL 3446576, at *2-3 (10th Cir. 2005) (remanding the case where "the ALJ never specified what he believed the credible medical evidence to be, either for the purpose of rejecting the doctors' RFC assessments or for the purpose of supporting his own finding", the ALJ rejected RFC assessments and made an RFC finding in between them, and where the court was unable to determine what evidence the ALJ relied on).

The Commissioner argues, however, that the finding that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently was consistent with Plaintiff's testimony that she could lift her 22-pound dog.  (Tr. 453.)  While the ALJ noted Plaintiff's testimony on this issue (*id.* at 32), she did not state that she relied on this as a basis for the RFC.  I further question whether testimony that the most Plaintiff can lift

-10-

is her 22 pound dog credibly translates to a RFC finding that Plaintiff can lift 20 pounds occasionally as part of a full-time job.  In any event, since I am unable to determine the basis of the RFC, the case must be remanded.

I also agree with Plaintiff that while the ALJ finds that there were mental limitations, she did not state these limitations in her hypothetical question.  Specifically, the ALJ found in the RFC that mentally, Plaintiff is capable of at least semiskilled work. (Tr. 34.)  This was not included in the hypothetical question.  (*Id.* 441, 460.)  Having found that impairment, it should have been included in the hypothetical.  *See Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993) (testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Commissioner's decision).

Plaintiff also argues that there is no statement in the record about what Plaintiff's PRW was.  I disagree.  The VE testified that he completed a "Work History Form" that identified Plaintiff's past relevant work as classified in the DOT and it was made part of the record, to which Plaintiff's counsel did not object.  (Tr. 136, 440, 461.)

However, I do find error with the VE's finding that Plaintiff could perform the PRW.  According to the VE, the cashier/wrapper and cosmetics positions required lifting 30 pounds occasionally.  (Tr. 441, 461.)  The Work History report showed that these  jobs required medium physical demands.  (*Id.* 136.)  However, the ALJ found that Plaintiff could only lift 20 pounds occasionally, or light work.  The VE's finding that Plaintiff could perform this PRW, which the ALJ relied on (*id.* 34), thus appears not to

be supported by substantial evidence.  This issue also needs to be addressed on

remand.[3]

            4.       <u>Whether the ALJ Made Improper Findings Regarding Household Chores and Plaintiff's Credibility</u>

The ALJ found it significant that Ms. Bays could read, lift her dog with effort, and

do some laundry and shopping with her mother.  Plaintiff argues that this is not

substantial evidence on the issue of whether she is disabled, citing *Frey v.

Bowen,* 816 F. 2d 508 (10th Cir. 1987) and *Thompson v. Sullivan,* 987 F. 2d 1482 (10th

Cir. 1992).  This is especially true, Plaintiff contends, given the severe limitations

diagnosed by her various treating physicians.

In response, the Commissioner argues that while Plaintiff's activities alone may

not have been conclusive on the issue of whether she could work, together with the

other evidence of record these activities provided substantial support for the ALJ's

conclusion that Plaintiffs impairments were not disabling.  Importantly, Plaintiff's ability

to perform household chores was only one of several factors the ALJ properly

considered.  The Commissioner asserts that Plaintiff's arguments essentially ask the

Court to reweigh the evidence and to arrive at a different conclusion than the ALJ.

I find that the ALJ did not properly assess Plaintiff's credibility.  The Tenth Circuit

has indicated that "sporadic performance does not establish that a person is capable of

engaging in substantial gainful activity." *Frey*, 816 F.2d at 516-17.  It further held:

---

[3]  I also note that the ALJ appeared to improperly penalize Plaintiff for having performed part time work in 2002. (Tr. 30.)  *See, e.g., Pinnt v. Chater*, 988 F. Supp. 1354, 1359 (D. Colo. 1997) (it was inappropriate for the ALJ to penalize a claimant for going back to school and looking for jobs which he later discovered he was unable to perform).

> In the present case, any reliance on Frey's 'daily activities' to undercut his allegation of pain is misplaced. Frey testified that he cannot sit, stand, walk, or drive a car for more than a brief interval, that he does no yard work and only minor house chores, mostly to care for himself. This lifestyle does not contradict a claim of disabling pain.

*Id.* at 517.

In this case, Plaintiff testified similarly.  She cannot stand except for very brief intervals.  Her sitting, walking and driving a car are limited, she rarely goes out, does only minimal grocery shopping, and is limited in almost all of her activities.  (Tr. 430-33.)  While she does laundry, she has to have someone else put it away.  (*Id.* 433.)  As in *Frey*, this very limited lifestyle does not contradict a claim of disabling pain.

Plaintiff also filled out a Daily Activities Questionnaire which the ALJ relied on. (Tr. 102-05.)  However, the  ALJ selectively picked out activities that supported her findings while ignoring other aspects of the Questionnaire that did not.  (*Id.* 32.)  For example, while Plaintiff indicated that she does laundry, light housekeeping and some cooking, she also indicated that her pain and fatigue significantly limited those activities.  (*Id.* 102.)  The ALJ ignored that limitation.  The ALJ may not simply pick out portions of the evidence that favor denial of benefits, while ignoring those favorable to disability.  *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at \*3 n. 2 (10th Cir. 2004).[4]

---

[4]  The ALJ also selectively applied the medical evidence regarding Plaintiff's complaints of pain. (Tr. 33-34.)  While she notes medical findings that Plaintiff's pain was improved or that Plaintiff felt good (citing to portions of Exhibit 14F), there are also many findings that document Plaintiff's pain.  (*See id.* 306-30.)  Further, the treating physicians' records are replete with reports of pain.  (*See, e.g.*, 6F- 13F.)  I also find that the ALJ did not properly assess Plaintiff's complaints of fatigue.

I find, based on the foregoing, that the ALJ did not properly assess Plaintiff's

credibility.  On remand, the ALJ shall reweigh Plaintiff's credibility and shall conduct a

proper analysis as to Plaintiff's pain and fatigue.  Further, "[i]f the ALJ finds that

plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry."  *Harrison v.*

*Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. 1994).  The ALJ "must show

that 'jobs exist in the national economy that the claimant may perform *given the level of*

*pain [he] suffers.*'"  *Id.* (quoting *Thompson*, 987 F.2d at 1490-91) (emphasis in original).

A VE may be required to testify on that issue.  *Id.*

IV.     CONCLUSION

Based upon the errors described above, I find that this case must be reversed

and remanded to the Commissioner for further fact finding and analysis.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner

for a rehearing pursuant to 42 U.S.C. § 405(g).

Dated March 28, 2007

                                        BY THE COURT:


                                        s/ Wiley Y. Daniel
                                        Wiley Y. Daniel
                                        U. S. District Judge